UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JASON CHRISTOPHER HUGHES, *also known as* RAYMOND JOHNSON,<br><br>Defendant. | 17-CR-00173 (MKB)<br><br>225 Cadman Plaza East<br>Brooklyn, New York<br><br>December 18, 2017 |

------------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: MICHAEL T. KEILTY, ESQ.
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

For the Defendant: AMANDA L. DAVID, ESQ.
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, New York 11201

Court Transcriber: RUTH ANN HAGER, C.E.T.**D-641
TypeWrite Word Processing Service
211 North Milton Road
Saratoga Springs, New York 12866

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

(Proceedings began at 10:07 a.m.)

COURT CLERK: Criminal cause for a plea hearing, case number 17-CR-173, United States v. Jason Hughes. Counsel, please state your name for the record beginning with the Government.

MR. KEILTY: Good morning, Your Honor. Mike Keilty for the United States.

MS. DAVID: Good morning, Your Honor. Amanda David on behalf of Mr. Raymond Johnson, charged in the face of Christopher Hughes.

THE COURT: Okay. So, your client would prefer to be addressed as Mr. Johnson?

MS. DAVID: Yes, Your Honor.

THE COURT: All right. Have a seat.

Are you Mr. Johnson?

THE DEFENDANT: Yes, I am, sir.

THE COURT: Do you speak and understand English?

THE DEFENDANT: Yes.

THE COURT: All right. The first thing I want to address is to ask the Government if appropriate victim notification has been made.

MR. KEILTY: It has, Your Honor.

THE COURT: Next, I want to make a record of the fact that there was a telephone conference held on Friday?

MS. DAVID: Yes, Your Honor.

THE COURT: At the Court's instance. Counsel for the defendant waived Mr. Johnson's appearance for that telephone conference. The point of the telephone conference was to review the penalty provision in paragraph 1(c) of the agreement. I'm looking at Government Exhibit 1 and I see that the potential amendment we discussed has been made. Is that accurate?

MR. KEILTY: That is accurate, Your Honor. The Government reviewed the supervised release term and it was an error in the original plea agreement, and has rectified that on the agreement provided to the Court.

THE COURT: And the date by which the defendant must plead guilty for the additional one-level reduction for acceptance of responsibility on page 3 has been amended as well?

MR. KEILTY: That is correct, Your Honor.

THE COURT: And is the plea agreement otherwise the same as the one I reviewed in advance of today's proceeding?

MR. KEILTY: It is.

THE COURT: And that's correct, Ms. David? And your client's executed the new one?

MS. DAVID: Yes, Your Honor.

THE COURT: Great. Mr. Johnson, the reason you're in my courtroom today is that your lawyer says you want to surrender your right to trial.

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: And plead guilty to Counts 1 and 6 of the indictment pending against you.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Before I may hear any plea of guilty that you choose to offer, I need to make sure you understand that I'm not the judge who's presiding over your case. The judge presiding over your case is United States District Judge Brodie. Maybe you've appeared before Judge Brodie at an earlier stage of your case.

THE DEFENDANT: I have, Your Honor.

THE COURT: Judge Brodie is the Judge who's going to decide whether any plea of guilty you offer should be accepted and if it is how your sentence should be calculated. I'm a magistrate judge, not a district judge like Judge Brodie and I don't have the authority under the law to take those steps.

If you wish, you have the absolute right to have it be Judge Brodie who listens to your guilty plea. If that's your choice, there will be no prejudice to you. You will be permitted to plead guilty under the same terms and conditions being offered to you now on another date that is convenient to Judge Brodie.

In the alternative though, if I have your consent and agreement, I do have the authority to be the judge who listens to your guilty plea. If you agree to proceed before

me, I’ll arrange for this entire proceeding to be recorded and for a transcript of the recording to be prepared so that Judge Brodie has a complete written record of everything we’ve said to each other before her Honor is called upon to decide whether to accept your guilty plea, or how to determine your sentence.

Do you understand what I’ve said?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you agree to give up your right to have Judge Brodie hear your plea and to present it instead to me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you making this decision voluntarily and of your own free will?

THE DEFENDANT: Yes, I am, Your Honor.

THE COURT: Have any threats or promises been made to induce you to agree to have me take your plea instead of Judge Brodie?

THE DEFENDANT: No, Your Honor.

THE COURT: Ms. David, I don’t want to say anything inappropriate, but I see your client is wearing dark glasses and carry -- and has what appears to be a cane that maybe something that helps him travel and I’m wondering if he’s able to read.

MS. DAVID: Yes, Your Honor. The glasses actually

are prescription glasses and because he has light sensitivity that's why they're shaded.

THE COURT: Okay. So he can read?

MS. DAVID: Yes.

THE COURT: Mr. Johnson, have you viewed the consent form and then determined that you will sign it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you see it here?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is that your signature?

THE DEFENDANT: Yes, Your Honor, it appears to be.

THE COURT: Did anybody force you to sign this?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Ms. David, do you know of any reason why your client should not consent to proceed before me for these purposes?

MS. DAVID: No, Your Honor.

THE COURT: I find the consent of the defendant knowing and voluntary. Adding my signature and today's date to the form to reflect my finding.

Mr. Johnson, before I may recommend to Judge Brodie that Her Honor accept any plea of guilty you choose to offer, I have to ask you a long list of questions. They're important questions. They're designed to make sure you understand what a serious decision it is you're being asked to make. The

questions are also designed to protect the prosecution and the Court because the questions and your answers to them will create a record that will show that you acknowledged that you understood what your rights were, that you agreed to surrender those rights, and that you did so voluntarily. Once that record is created, it will be legally valid and permanently binding upon you. So I'm asking you to listen carefully to the questions.

If I ask you something and you're not sure you understand what I mean just tell me. I will try to rephrase it and make it clearer. If you want to interrupt me at any point in time because you have a question for me or you'd like the opportunity to speak privately with your attorney just tell me and I will give you the opportunity. Are we clear so far?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's so important that you're truthful during this proceeding that I'm going to ask my clerk to place you under oath before we proceed. Please rise and raise your right hand.

JASON CHRISTOPHER HUGHES, SWORN

THE COURT: You may be seated.

Now that you have taken this oath, when you answer my questions you do so subject to the penalties of perjury or making a false statement. Simply put, that means that if you

lie during this proceeding, new criminal charges can be brought against you for it. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: State your full name.

THE DEFENDANT: Raymond Johnson.

THE COURT: How old are you?

THE DEFENDANT: Forty-six.

THE COURT: How far did you go in school?

THE DEFENDANT: Two years of college.

THE COURT: Is English your native language?

THE DEFENDANT: Yes.

THE COURT: Are you having any difficulty hearing or understanding me today?

THE DEFENDANT: No.

THE COURT: Are you now or have you in recent months been under the care of a doctor --

THE DEFENDANT: Yes.

THE COURT: -- psychiatrist or other healthcare professional?

THE DEFENDANT: A psychiatrist.

THE COURT: For what kind of problem?

THE DEFENDANT: The diagnosis is major depression with psychotic features and severe post-traumatic stress disorder.

THE COURT: And are you receiving medication and

therapy for that?

THE DEFENDANT: I am, Your Honor.

THE COURT: Ms. David, are you familiar with your client's medical regimen?

MS. DAVID: Yes, Your Honor.

THE COURT: Can you put it on the record?

MS. DAVID: Yes, Your Honor. I believe he takes prescription Ativan once -- or twice daily.

THE DEFENDANT: Sometimes three times.

MS. DAVID: Sometimes three times daily.

THE COURT: And is that the sole medication you're taking?

THE DEFENDANT: No, I'm also taking Xanax.

THE COURT: And does any of that affect your ability to understand and comprehend and -- what I'm saying or remain focused and alert during this proceeding?

THE DEFENDANT: It should not interfere.

THE COURT: Do you feel clear today?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you being seen by a medical professional for any other physical, mental or emotional problems?

THE DEFENDANT: I have physical disabilities, but I currently do not have the health insurance to get a -- a doctor to look at them.

THE COURT: Are you taking any other medications?

THE DEFENDANT: Over-the-counter medications --

THE COURT: Such as?

THE DEFENDANT: -- for pain. High-dose ibuprofen three times a day to maintain mobility and diphenhydramine for sleep.

THE COURT: Okay. Other than those, are you taking any other medications?

THE DEFENDANT: No, Your Honor.

THE COURT: Other than the medications you've listed, in the last 24 hours, have you taken any narcotics, drugs, medicine, pills or alcohol?

THE DEFENDANT: Nothing that I hadn't mentioned previously.

THE COURT: Other than what you've already described, have you ever been hospitalized or treated for psychiatric or substance abuse problems, other than what you've already told us?

THE DEFENDANT: I have in the past been treated for psychiatric problems.

THE COURT: Okay. Are they -- were they different in kind than what you've already described?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: It is, Your Honor.

THE COURT: Do you understand everything that's gone on here so far?

THE DEFENDANT: Yes.

THE COURT: All right. Ms. David, have you reviewed the matter of pleading guilty very carefully with your client?

MS. DAVID: I have, Your Honor.

THE COURT: Does he, in your judgment, understand the rights he'll be waiving if he enters a guilty plea?

MS. DAVID: I believe he does.

THE COURT: Is he capable of understanding the nature of this proceeding?

MS. DAVID: Yes, Your Honor.

THE COURT: Do you have doubts about his competence to enter a plea of guilty at this time?

MS. DAVID: No, Your Honor.

THE COURT: Have you alerted your client to the maximum and minimum sentence and fine that might be imposed and discussed with him the likely operation of the sentencing guidelines in this case as best you can anticipate them?

MS. DAVID: I have, Your Honor.

THE COURT: Thank you. Mr. Johnson, have you had enough time and opportunity to review your case very carefully with your lawyer?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: Are you satisfied to have Ms. David be

the attorney defending you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you reviewed the indictment carefully with Ms. David, that is the written statement of the charges against you?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: The indictment charges you with transmitting various threats to injure someone else, someone identified as Jane Doe and her family on five separate occasions, and a second threat -- and a sixth threat -- excuse me -- to someone known as Jane Doe number two. Have you had -- do you understand what you're accused of in this indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You have a right to plead not guilty to these charges and to persist in any not guilty plea you've made on any prior occasion. That's your right even if you did the things the indictment describes. It's never lying or misleading the Court to plead not guilty even if you committed the acts of which you stand accused. Every defendant guilty or not has the right to enter a not guilty plea and thereby exercise his constitutional right to a trial. Is that clear to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you were to plead not guilty or

persist in your previously-entered not guilty pleas, then under the Constitution and laws of the United States you would be entitled to a speedy and pubic trial by a jury with the assistance of your attorney at all stages of the case against you not just your trial, and on all charges pending against you not just the ones that are the subject of your agreement. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At your trial you would be presumed to be innocent. The prosecution would be required to overcome the presumption of innocence and to prove that you were guilty by competent evidence and beyond a reasonable doubt. You would have no obligation to prove that you were innocent at your trial. If the prosecution failed to prove your guilt beyond a reasonable doubt, the members of the jury would have the duty to return a verdict of not guilt and acquit you. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That’s why juries sometimes find a defendant not guilty even though the members of the jury believe that he probably committed the crimes of which he stands accused. Probably is not enough for a conviction. When a jury acquits a defendant the jurors are not necessarily saying that they believe he is innocent, they are only saying that they are not convinced beyond a reasonable doubt that he

is guilty. Do you understand the difference?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you proceeded to trial, then during the course of your trial the prosecutor's witnesses would be required to come into the courtroom and to present their testimony against you right in front of you and your attorney. Your attorney would have the right to question the prosecution witnesses on cross-examination, to raise objections to evidence the prosecution attempted to offer against you, and working together with you to offer evidence and arguments in your defense and on your behalf during the trial. You could even issue subpoenas which are like court orders requiring witnesses to attend the proceedings and testify if there were witnesses you wished to call as part of your case. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At your trial you yourself would have the right to testify as a witness in your own defense if you made the choice to do so, but nobody could make you testify at your trial if you preferred not to. That is because the Constitution of the United States says that no one may be required to say anything self-incriminating.

If you decided that you preferred not to be a witness in your own defense at your trial, Judge Brodie would instruct the members of the jury that they could not take that

decision into account or hold your silence at your trial against you in any way when they decided what their verdict should be. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: On the other hand if you offer a guilty plea and Judge Brodie accepts it you will as a result be surrendering your constitutional right to a trial and all of the other rights that I have been describing to you today. There will be no further trial of any kind in your case. You will have no right to appeal from the conviction or judgment of guilt that Judge Brodie will enter against you. Judge Brodie will essentially find you guilty based upon what you admit to in my courtroom today and that will free the prosecutor of any responsibility to prove what you did. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you proceeded to trial and you were convicted by a jury verdict you would have a right to take an appeal and to ask a higher court to review the legality of all of the proceedings that led up to your conviction. But when you plead guilty you are essentially substituting your own words for a jury's verdict. When you do that you surrender your right to bring an appeal or raise a legal challenge to the conviction or judgment of guilt that is entered against you as a result. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you plead guilty, I'm going to have to ask you questions about what you did so that Judge Brodie and I can be satisfied that your plea of guilty is based on things that really happened. You don't have to answer questions about that unless you want to go forward with your guilty pleas. But if you do answer those questions and you admit your involvement in criminal acts you will be surrendering your constitutional right not to incriminate yourself. Do you understand me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you still want to go forward and surrender your right to trial and the other rights I've been describing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm told you're making this decision pursuant to a plea agreement. That agreement has been marked as Government Exhibit 1, and my clerk is going to show it to you and your lawyer right now.

[Pause in the proceedings.]

THE COURT: Do you recognize this document?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you sign the final page?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you read it before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did your lawyer tell you what it meant?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about it you wanted to ask me or review again with Ms. David?

THE DEFENDANT: No, Your Honor.

THE COURT: It's all clear to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Does that agreement contain a full, complete, accurate statement of everything that you and the prosecution have agreed to regarding your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anybody promised you anything in return for pleading guilty that is not written down in that agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: May I have it back please?

[Pause in the proceedings.]

THE COURT: The agreement says that you wish to plead guilty to Counts I and VI.

Count I charges you with knowingly and intentionally transmitting in interstate and foreign commerce an electronic communication from a specified email address to Jane Doe number one on or about March 20th, 2015 with certain language describing Jane Doe number 1 among other things in the email.

Count VI charges you on or about September 19th, 2015 with using a different email address and knowingly and intentionally transmitting in interstate and foreign commerce a threat to injure the person -- another person, Jane Doe number 2, and there is some text from that email in Count VI as well.

Do you have those charges clear in your mind?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I need to review with you the penalties you'll be facing if you decide to go forward with a guilty plea.

Each of these charges carries a prison term that could be as long as five years and those penalties could be imposed consecutively for a total exposure of ten years of incarceration. Are we clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In addition, each carries a term of supervised release of up to three years for a total exposure of up to six years of supervised release. Are we clear on that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Supervised release is a period of time, it starts to run only when you finish serving any term of imprisonment imposed in your case. When you do finish serving that prison term you'll be released from physical custody in a

prison but you won't be completely at liberty because you will be required to follow the rules of supervised release.

There are so many of those rules I can't list them for you now. They will include travel restrictions, reporting requirements, requirements that you answer a probation officer's questions carefully and honestly, and a requirement that you commit no new crimes at all. If you break any supervised release rule, you could be arrested and brought back to this courthouse and sent back to prison for up to two years on each of these charges for a total of four years more of incarceration with no credit for the time you spent serving your original sentence or the time you spent with your freedom restricted by the terms of your supervised release.

Did you understand all that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Each charge carries a fine of up to $250,000 for a total fine exposure of $500,000. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If either of these victims suffered any losses, you could be required to make restitution separate and apart from any fine that's imposed. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And finally a $100 special assessment will be imposed on each of these charges payable at or about

the time of sentencing. Is that clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Finally, someone who is not an American citizen could be subject to deportation for committing crimes of this nature. Do you understand me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Then I want to turn your attention to what we call the Sentencing Commission Guidelines. Judge Brodie will be required to calculate these guidelines and take them into account when she decides what sentence to impose in your case.

Have you discussed the guidelines with Ms. David and gotten her advice about how Judge Brodie is likely to calculate the guideline range?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The prosecutor estimates that Judge Brodie will calculate your guideline range to be 12 to 18 months long. I'm sure the prosecutor made the estimate carefully, but you need to know that it is not binding on Judge Brodie. Judge Brodie will make her own calculation of the guideline range.

Her Honor won't undertake to do that until after reviewing something we call a pre-sentence report. The report has not yet been written. Once it is, you, your lawyer and the prosecutor will all be permitted to read it. You will

then have an opportunity to appear before Judge Brodie and you may tell her at that time if there is anything in the report that you think is in inaccurate. Then and only then will Judge Brodie calculate the guideline range.

It is possible that Judge Brodie will calculate a guideline range even longer than the 12 to 18 months predicted by the prosecution. Is that clear to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Even after Judge Brodie calculates your guideline range, her Honor will look at additional circumstances about your background and your criminal conduct. Moreover, the guideline range will be advisory but not binding on Judge Brodie. So it's possible that Judge Brodie will impose a sentence that is even longer or perhaps shorter than the guideline range her Honor calculates. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If Judge Brodie sentences you to prison for 21 months or less, you will have no right to challenge any aspect of your guilty plea, your judgment of conviction, or your sentence. Even if you receive a sentence that is longer than 21 months in prison, you will not be permitted to withdraw your guilty plea or to challenge your conviction on that basis. The only right you would have in that circumstance would be to challenge the length of the sentence

that you receive from Judge Brodie. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You may have heard of parole. Parole is a program of early release from a prison term. It's a state court program only. You're in federal court. There is no parole in the federal system. You will not be released early from the sentence you receive from Judge Brodie on parole. Do you understand me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about the charges against you, the penalties, the guidelines, the rights you're being asked to waive, your plea agreement, or anything else?

THE DEFENDANT: No, Your Honor.

THE COURT: Is everything I've told you today clear?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you continue to feel alert and focused and clear-headed?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you ready to enter your pleas?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Ms. David, do you know of any reason why your client should not plead guilty to the two charges pending against him?

MS. DAVID: No, Your Honor.

THE COURT: Mr. Johnson, with respect to Counts I and VI of the indictment that is pending against you, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: Do you make these pleas of guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone threatened you or forced you in any way to make these pleas of guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Other than what is written down in your plea agreement with the prosecutor, the document you looked at before that you signed, has anyone promised you anything in return for your guilty plea?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone promised you what sentence Judge Brodie will impose?

THE DEFENDANT: No, Your Honor.

THE COURT: Tell me in your own words what did you do that makes you guilty of these crimes.

THE DEFENDANT: In March 2015, while suffering from severe mental illness, I knowingly and intentionally sent an email through interstate commerce that contained threats to Jane Doe one. When I sent the email to Jane Doe one I believed she would perceive the content as a threat to injure

her.

In September of 2015, while suffering from severe mental illness, I knowingly and intentionally sent an email through interstate commerce that contained threats to Jane Doe number two. When I sent the email to Jane Doe number two, I believed that she would perceive the content as a threat to injure her.

THE COURT: And in connection with Jane Doe number one, did you use the email address RayJohngplus@mail.com?

THE DEFENDANT: I did.

THE COURT: In connection with the threat to Jane Doe number two, did you use the email address D-A-S-E-I-N-D-A-W-G @mail.com?

THE DEFENDANT: I did.

THE COURT: Ms. David, your client's allocution --

MS. DAVID: Yes, Your Honor.

THE COURT: -- is -- includes the contention that he was suffering from severe mental illness at the time of the -- the offense conduct.

MS. DAVID: Yes, Your Honor.

THE COURT: What has your investigation been of your client's mental -- mental health history and why is a mental health-based defense not appropriately invoked on his behalf?

MS. DAVID: Your Honor, Mr. Johnson -- his contention is that while he was suffering from mental illness

at the time, he did knowing and intentionally commit these acts, so we're not pursuing an insanity defense. Nor is he saying that he is not responsible because of the mental illness, but that is part of his history and we have gotten his school records and are still talking with his family members and other individuals.

THE COURT: So I think you're cutting in and out --

MS. DAVID: I'm sorry.

THE COURT: -- a little bit. If you can just bring the mic a little closer.

MS. DAVID: Sure. And we are speaking with his family members and other individuals in trying to get a more complete social history.

THE COURT: So, obviously I'm making a record here.

MS. DAVID: Sure.

THE COURT: And not trying to be critical of -- of your efforts, Ms. David. But do I understand you to be saying that you and the other lawyers and professionals in your office, to the extent you relied upon them, have reviewed Mr. Johnson's history, have discussed his mental health history with him and are satisfied that given the governing legal standard, an insanity defense is not available to him?

MS. DAVID: That's correct, Your Honor.

THE COURT: And that he knew what -- that what he was doing was wrong at the time of these acts?

MS. DAVID: Yes, Your Honor. That is not a defense in this case.

THE COURT: Mr. Johnson, do you dispute what your lawyer has just represented to the Court?

THE DEFENDANT: No, Your Honor.

THE COURT: Would the Government have me inquire further in this matter or any other?

MR. KEILTY: No, Your Honor. Satisfactory, thank you.

THE COURT: Based on the information given to me today, I find that the defendant Mr. Johnson indicted under the name Jason Christopher Hughes, also known as Raymond Johnson, is acting voluntarily, fully understands his rights and the consequences of his plea, and that his pleas have a factual basis. I therefore respectfully recommend that Judge Brodie accept the defendant's pleas of guilty to Counts 1 and 6 of indictment 17-CR-173.

I understand that we do not yet have a sentencing date from Judge Brodie's chambers, and I'll direct the United States to be in touch with those chambers to set a sentence date and to advise defense counsel of it as soon as one is obtained.

And I'll tell Mr. Johnson that between now and when that sentence date is, you will be interviewed by a probation officer. The reason for that interview will be to help the

officer prepare the pre-sentence report I described to you during the proceedings we just had. And therefore the more candid and cooperative you are during that interview, the more complete and accurate the report for Judge Brodie will be.

Is there anything further from the Government?

MR. KEILTY: No, Your Honor. Thank you.

THE COURT: Bail continued?

MR. KEILTY: Yes, Your Honor.

THE COURT: Anything further from the defendant?

MS. DAVID: No, Your Honor.

THE COURT: Thank you everybody. Have a good day.

MR. KEILTY: You too, Your Honor.

MS. DAVID: You too.

(Proceedings concluded at 10:35 a.m.)

* * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

Ruth Ann Hager, C.E.T.**D-641

Dated: January 24, 2018