

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MTK
F. #2016R00664

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 29, 2021

<u>By ECF</u>

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Jason Christopher Hughes</u>
             <u>Criminal Docket No. 17-173 (MKB)</u>

Dear Chief Judge Brodie:

      The government respectfully submits this letter in advance of the defendant Jason Christopher Hughes' sentencing in the above-captioned case, which is scheduled for December 14, 2021 at 10:00 a.m. On October 7, 2020, the defendant pleaded guilty before Your Honor, pursuant to a plea agreement, to one count of transmitting threats to injure, in violation of 18 U.S.C. § 875(c). For the reasons set forth below, the government respectfully requests that the Court impose a sentence within what the government submits is the applicable United States Sentencing Guidelines ("Guidelines" or "USSG") range of 10 to 16 months' imprisonment.

    I.    <u>Background</u>

      The Revised Pre-Sentence Investigation Report ("PSR") accurately sets forth the offense conduct. Between March 16, 2015 and March 20, 2015, the defendant sent multiple threatening emails to Jane Doe #1. Jane Doe #1 and the defendant became pen pals in the late 1970s when both were in the 4th grade. During that time period, Jane Doe #1 stated that the defendant sent her hundreds of letters detailing the terrible nature of his home and life. At first, Jane Doe #1 responded to the defendant's letters with words of support and comfort. However, the subject matter of the defendant's letters became increasingly dark and threatening over a period of years. When Jane Doe #1 attempted to break off correspondence with the defendant due to the threatening nature of his letters, the defendant replied that Jane Doe #1 and his cats were the only two reasons why he was not killing himself. Jane Doe #1 also reported that the defendant's letters referenced the teachings of the occult, cannibalism, writings on anarchism, and his hatred of authority.

During the course of the late 1980s and 1990s, the defendant's letters to Jane Doe #1 became increasingly disturbing and threatening. During Jane Doe #1's freshman year at college, the defendant showed up unannounced to Jane Doe's dormitory after she had ceased responding to his letters. In subsequent letters following the visit, the defendant threatened to kill Jane Doe #1's family and loved ones.

Jane Doe #1 stated that she attempted to obtain restraining orders against the defendant, but since he resided in Billings, Montana and she resided in Kansas, she was unable to procure the orders. Following her marriage, Jane Doe #1 reported that the defendant began sending threatening letters to her in-laws which stated that he knew Jane Doe #1 was now married. Due to the defendant's incessant letter writing and stalking, Jane Doe #1 and her husband moved overseas where she subsequently became a teacher and attempted to keep a low profile. It did not work. In March of 2015, the defendant located Jane Doe #1 and resumed sending threatening messages to her. The messages contained such threatening statements as:

i. "consider yourself very very lucky indeed that I don't dare bring Darkness right to your classroom or front door. See I don't like children. I actually hate them. I laugh when one of them is abducted or falls under a train or is eaten by wild dogs. This is who I am, and You Helped Create Me."

ii. "Things I have done . . . they would cool your blood beyond ice. You would wish you had never been born to not have known some of the horrendous things I have done. but since YOU were the original person who inspired me to choose Evil? EVIL BE THOU MY GOOD! know this: I did my early Works? I DID THEM IN YOUR NAME! and no I will never get caught . . . I take care upon care upon care to bury very, very deeply . . . ."

iii. "they last thing they ever hear?" "it is a__name__ . . . whispered and then the All Too Brief . . .end. it is better to kill a soul, that NEVER ENDS."

iv. "I have decided to come out of 'retirement'" "I am going to do something . . . something really terrible . . . and it will be? Because I am reminded of YOU. You will again be the inspiration for my Work. road trip . . . . . . . .I never shit where I eat. taking the wet_far away is the single most important thing one can do . . . never get caught! You should have apologized, given this opportunity. You chose to remain silent. Someone else gets to pay the bill now . . . someone young . . . bright . . . hopeful . . like a college student.

II. Guidelines Calculation

The government agrees with the Probation Department that the applicable Guidelines calculation is as follows:

2

| | | |
|---|---|---:|
| Base Offense Level (§ 2A6.1(a)(1)) | | 12 |
| Plus: | The offense involved more than two threats (§2A6.1(b)(2)(A)) | +2 |
| Total: | | <u>14</u> |

The Probation Department calculated that the defendant's criminal history score is 0, and that his Criminal History Category therefore is I.  PSR ¶ 55.  After two levels are subtracted from the total offense level of 14 to reflect the defendant's acceptance of responsibility, the resulting offense level is 12.  This results in a Guidelines range of 10 to 16 months' imprisonment.

III.   Analysis

The government respectfully submits that a sentence within the Guidelines range of 10 to 16 months' imprisonment is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).  Interpreting the Supreme Court's decision in <u>United States v. Booker</u>, the Second Circuit has held that "sentencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)." <u>United States v. Crosby</u>, 397 F.3d 103, 111 (2d Cir. 2005).  "While district courts enjoy discretion following <u>Booker</u>, that discretion must be informed by the § 3553(a) factors[.]" <u>Id.</u> at 132 (internal quotation marks omitted).  In this case, the factors set forth in 18 U.S.C. § 3553(a) weigh squarely in favor of a Guidelines sentence.

Here, the defendant's conduct has literally uprooted lives and destroyed careers.  For example, Jane Doe #1 was forced to deal with the stress of the defendant's increasingly threatening emails for nearly twenty years.  Jane Doe #1 was forced to move overseas due to the fear that the defendant would carry out his disgusting threats to her or members of her family.  Similarly, the narratives provided by the additional victims detailed in the PSR demonstrate the defendant's long-term campaigns of harassment, stalking, and threats to injure.  Indeed, each victim tells a strikingly similar story about their interactions with defendant.

A Guidelines sentence is also necessary here in order to ensure that the sentencing goals of specific and general deterrence are appropriately met.  With respect to specific deterrence, the imposition of a meaningful prison sentence will likely deter the defendant from reoffending.  With regard to general deterrence, a Guidelines sentence will send a strong message to the community that this type of criminal conduct will be punished with a term of incarceration.  Such a sentence will make plain that online internet harassment, which has become all too common in the digital age we live, will simply not be tolerated.  The defendant has spewed hatred and vile while safely hidden behind a computer screen for far too long.  He must now face the consequences.

IV. <u>Conclusion</u>

   For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 10 to 16 months' imprisonment which is sufficient, but not greater than necessary, to achieve the goals of sentencing. <u>See</u> U.S.S.G. § 3553(a)(2).

          Respectfully submitted,

          BREON PEACE
          United States Attorney

     By: /s/
        Michael T. Keilty
        Assistant U.S. Attorney
        (718) 254-7528

cc: Amanda David, Esq. (by ECF and Email)
   Clerk of Court (MKB) (by ECF)